# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **ASSAF AMAR,** *Plaintiff*, v. **METROPOLITAN GOVERNMENT OF NASHVILLE AND AUTOMATED COLLECTION SERVICES, INC.** *Defendant.* | Civil Action No. _____<br><br>JURY DEMAND |

## I. INTRODUCTION

After Mr. Assaf Amar lawfully filed an action in state court to dispute an alleged debt owed to the Metropolitan Government of Nashville ("Metro") Metro ignored the ongoing dispute and attempted to unlawfully collect a disputed debt. Despite being aware of Mr. Amar's disputed claim through pending litigation in Chancery Court, Metro admitted in writing that the its collections efforts against Mr. Amar should not have been pursued. During its unlawful pursuit, Metro, and its vendor ACS, violated the Fair Credit Reporting Act and damaged Mr. Amar's personal and professional reputation.

## II. JURISDICTION AND PARTIES

1. Plaintiff, Assaf Amar is a natural person and a resident of Florida. During all relevant periods Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

2. Defendant, Metropolitan Government of Nashville ("Metro") is a municipal corporation and a "government" entity as defined by the Fair Credit Reporting Act101.Metro can be

served with process Defendant can be served with process at 108 Metropolitan Courthouse, Nashville, Tennessee 37219.

3. Defendant, Automated Collection Agency, Inc. is a Tennessee corporation organized under the laws of Tennessee with its principal place of business at 304 Northcreek Boulevard, Goodlettsville, TN 37072.

4. The United States District Court for the District of Tennessee has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., is a federal consumer protection law.

### III. FACTUAL ALLEGATIONS

5. Mr. Assaf Amar is a businessman, entrepreneur and real estate developer with business interests throughout the State of Tennessee .

6. During the relevant period, Mr. Amar resided in Nashville, TN and was a partner in various residential real estate development companies in Nashville, TN,

7. During this time, Mr. Amar was a partner in ASG Investments, LLC.

8. Among its ongoing projects, ASG Investments, LLC was in the process of overseeing the construction and development of two (2) new homes located on Waco Drive in Nashville Tennessee ("Waco Properties")

9. During the pendency of development of the Waco Properties, Mr. Amar's name was presumably used by a subcontractor to initiate water, gas, and other utilities at the Waco Properties.

10. In February of 2022, Mr. Amar was shocked to receive an invoice from Metro Water Services totaling $36,365.14 for alleged water usage at the Waco Properties.

11. After consulting with knowledgeable individuals, Mr. Amar realized it would be impossible for his contractors to use that much water during the construction and development of the Waco Properties and all other ongoing projects individually and on behalf of ASG Investments, LLC.

12. Ultimately, Mr. Amar did not agree to pay the invoice because the invoice is not accurate as to the amount of water used by Mr. Amar and/or ASG Investments, LLC.

13. In April of 2022, ASG sold the Waco Properties to two (2) separate individuals.

14. After ASG sold the Waco Properties, Metro, on or about May 16, 2022, proceeded to shut off the water to at 622 Waco Drive Unit A, despite the fact that Mr. Amar or ASG no longer owned the property.

15. Although he was no longer the owner, Mr. Amar felt obligated to assist the new owner in turning the water back on because it presented a dangerous condition to the new tenants.

16. Since Metro refused to turn the water back on, Mr. Amar was forced to file a lawsuit against Metro Nashville.

17. On May 16, 2022, Mr. Amar filed a Verified Compalitn for Declaratory Judgment and Injunctive Relief that disputed the validity of the debt and sought a Temporary Restraining Order against Metro Nashville forcing them to turn the water back on. ("Chancery Court Litigation")

18. Mr. Amar sought and received a Temporary Restraining Order. A copy of the Order is attached as **Exhibit A.**

19. After the Chancery Court litigation commenced, Mr. Amar relocated to Florida and was preparing to attend a residential real estate closing. On the eve of the closing, Mr. Amar was notified that an issue was spotted on his credit report.

20. Upon further review, Mr. Amar discovered that a company named Automated Collection Services Inc. ("ACS") reported false information on Plaintiff's credit report with respect to the alleged debt associated with the Waco Properties.

21. This caused Mr. Amar great distress, negatively impacted his business reputation.

22. Mr. Amar continues to suffer ongoing emotional harm including and not limited to frustration, stress, anxiety, worry, damage to reputation, and economic losses including and not limited to damage to their credit, lower credit scores, and lost opportunities to receive credit, in amounts to be decided by the jury at trial, and plaintiffs incurred attorney fees and costs.

23. During the pendency of the Chancery Court Litigation, Mr. Amar sent a subpoena to ACS and received the following email between Metro Attorney Cate Pham and ACS where Ms. Pham admitted that:

> "This water bill is in active litigation with the Legal Department. It definitely should not have been sent to collections. I need to see any communication that was sent to the collection agency from Mr. Amar/his attorney and any response sent by the collection agency ASAP. A true and correct copy of this email is attached as **Exhibit B.**

24. Given the egregious nature of Metro and its agents conduct and the immense damages suffered by Mr. Amar, he had no choice but to bring this lawsuit.

## **CAUSES OF ACTION FIRST CLAIM FOR RELIEF AGAINST METRO NASHVILLE**

(15 U.S.C. § 1681n/o)

25. Plaintiffs re-allege the paragraphs above by reference.

26. Metro Nashville willfully or negligently failed to comply with its responsibilities under the FCRA found at 15 U.S.C. § 1681s-2(b) by improperly sending Mr. Amar's disputed

account to ACS or other vendors and failing to conduct a timely investigation with respect to the disputed information that was subject of the Chancery Litigation.

27. Metro Nashville failed to adequately review all relevant information it provided to its vendors to assist with the debt collection process.

28. As a result of Metro's willful or negligent failure to comply with the FCRA, Mr. Amar is entitled to compensation for their damages as alleged above, punitive damages (upon a determination of a willful violation), and reimbursement of reasonable attorney fees and costs under 15 U.S.C. § 1681n/o.

## CAUSES OF ACTION FIRST CLAIM FOR RELIEF AGAINST AUTOMIATED COLLECTION SERVICE, INC.

(15 U.S.C. § 1681n/o)

29. Plaintiffs re-allege the paragraphs above by reference.

30. ACS willfully or negligently failed to comply with its responsibilities under the FCRA found at 15 U.S.C. § 1681s-2(b) by improperly reporting Mr. Amar's account as delinquent to the credit reporting agencies.

31. By failing to conduct a timely investigation with respect to the disputed information contained in plaintiffs' credit reports after receiving notice of the disputes by the credit reporting agencies, Experian, and by failing to review all relevant information provided by Equifax and Experian with respect to plaintiffs' disputes.

32. As a result of Metro's willful or negligent failure to comply with the FCRA, plaintiffs are entitled to compensation for their damages as alleged above, punitive damages (upon a determination of a willful violation), and reimbursement of reasonable attorney fees and costs under 15 U.S.C. § 1681n/o.

## IV. CONCLUSION

**WHEREFORE,** after a determination or stipulation that defendants' conduct as alleged in this complaint violated the FCRA, plaintiffs seek judgment against defendants for the following:

1. An award of statutory and actual damages in an amount not less than $100,000.00 against Metro Nashville and ACS;

2. An award of punitive damages in an amount not less than $100,000.00 against Metro Nashville and ACS;

3. An award directly for reasonable attorney fees and costs as allowed by statute; and

4. Any other equitable relief this Court may determine to be fair and just.

Submitted by,

August 7, 2024,

*//s// Jake C. VanAusdall*
Jake C. VanAusdall (BPR #35369)
MAURICE WUTSCHER LLP
3102 West End #400
Nashville, TN 37203
Tel. (615) 425-4374
JVanAusdall@mauricewutscher.com

*Attorney for Plaintiff*